## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| MEHDI MOINI, | § | |
| *Plaintiff*, | § | Civ. Action No. 1:10-cv-00180-SS |
| | § | |
| v. | § | |
| | § | |
| THE UNIVERSITY OF TEXAS AT | § | |
| AUSTIN, et al. | § | |
| *Defendants*. | § | |

---

## UNIVERSITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

DAVID C. MATTAX
Director of Defense Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division

DARREN G. GIBSON
Texas Bar No. 24068846
Assistant Attorney General
Office of the Attorney General
General Litigation Division - 019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

***ATTORNEYS FOR DEFENDANTS***

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ............................................................................... iii

I.     NATURE AND STAGE OF PROCEEDINGS ................................................1

II.    STATEMENT OF FACTS .............................................................................2

III.   ARGUMENT ...............................................................................................12

      A.     Plaintiff Cannot Establish A *Prima Facie* Claim of National Origin or Age Discrimination ................................................................................12

      B.     Plaintiff Cannot Establish a *Prima Facie* Claim of Retaliation............................17

      C.     Plaintiff's Claim Regarding Negative Job References Is Barred By His Failure to Exhaust His Administrative Remedies ..............................................20

IV.   CONCLUSION ...........................................................................................20

CERTIFICATE OF SERVICE ..........................................................................22

# TABLE OF AUTHORITIES

## CASES

*Ajao v. Bed Bath and Beyond, Inc.*,
    265 Fed.Appx. 258 (5th Cir. 2008) ........................................................................18

*Babrocky v. Jewel Food Co.*,
    773 F.2d 857 (7th Cir. 1985) ................................................................................20

*Bright v. GB Bioscience Inc.*,
    305 Fed.Appx. 197 (5th Cir. 2008) ........................................................................16

*Burlington Northern & Santa Fe Railway Co. v. White*,
    548 U.S. 53 (2006) ...........................................................................................15, 17

*Clark Cnty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001) .........................................................................................18, 19

*Clayton v. Rumsfeld*,
    106 Fed. Appx. 268 (5th Cir. 2004) ......................................................................20

*Davis v. Dallas Area Rapid Transit*,
    383 F.3d 309 (5th Cir. 2004) ...........................................................................12, 13

*Evans v. City of Houston*,
    246 F.3d 344 (5th Cir. 2001) ................................................................................17

*Fine v. GAF Chemical Corp.*,
    995 F.2d 576 (5th Cir. 1993) ................................................................................20

*Grennell v. Gastr. Assocs., P.A.*,
    2008 WL 2882618 (S.D. Miss. July 25, 2008) ......................................................14

*Hart v. Edwards*,
    2009 WL 691069 (M.D. Ga. Mar. 11, 2009) ........................................................14

*Ikossi-Anastasiou v. Bd. of Sups. of La. State Univ.*,
    579 F.3d 546 (5th Cir. 2009) ................................................................................18

*McCoy v. City of Shreveport*,
    492 F.3d 551 (5th Cir. 2007) .................................................................12, 13, 15, 17

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973).................................................................................................12

*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*,
245 F.3d 507 (5th Cir. 2001) ....................................................................................13

*Rachid v. Jack In The Box, Inc.*,
376 F.3d 305 (5th Cir. 2004) ....................................................................................13

*Raggs v. Miss. Power & Light Co.*,
278 F.3d 463 (5th Cir. 2002) ....................................................................................18

*Reeves v. Sanderson Plumbing Products, Inc.*,
530 U.S. 133 (2000)..................................................................................................16

*St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502 (1993)..................................................................................................16

*Taylor v. Books A Million, Inc.*,
296 F.3d 376 (5th Cir. 2002) ....................................................................................20

*Young v. City of Houston*,
906 F.2d 177 (5th Cir. 1990) ....................................................................................20

TO THE HONORABLE SAM SPARKS, UNITED STATES DISTRICT JUDGE:

Defendants The University of Texas at Austin (the "University") and William C. Powers, Jr., in his official capacity as President (collectively, the "University Defendants"), file this Motion For Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and in support thereof, respectfully show the Court as follows:

## I.    NATURE AND STAGE OF PROCEEDINGS

This is an employment discrimination and retaliation case arising out of Plaintiff's employment with the University's Department of Chemistry and Biochemistry (the "Department"). Plaintiff's Second Amended Original Complaint (the "Complaint") is the operative complaint. (Dkt. # 21.) On January 10, 2011, the Court dismissed with prejudice Plaintiff's claims against the Individual Defendants under sections 1981 and 1983. (Dkt. # 27.) The Court also dismissed with prejudice Plaintiff's Title VII claims based on conduct prior to September 15, 2007 as time-barred. (*Id.*) As a result, the only claims left in this case are Plaintiff's timely claims against the University for national origin discrimination and retaliation under Title VII and his ADEA age discrimination claim against President Powers (in his official capacity) seeking reinstatement. (*Id.* n.13.)

Pursuant to the Court's scheduling order, the parties completed discovery on April 8, 2011,[1] and dispositive motions (including this one) are due by April 15, 2011. (Dkt. # 15.) Plaintiff filed a motion to compel regarding certain discovery on April 8. (Dkt. # 34.) No other motions are currently pending. This case is set for docket call on May 27, 2011. (Dkt. # 15.)

---

[1] The parties continue to address certain outstanding discovery issues in hopes of resolving these matters without intervention by the Court.

## II.    STATEMENT OF FACTS

Plaintiff began working at the University in 1989 as a staff scientist and became the Director of the Department's Mass Spectrometry Facility (the "MSF") in 1990.[2]  Over the next ten years, Plaintiff was promoted three times, finally earning the title Senior Research Scientist.[3]  From 2002 through 2008, Plaintiff also held annual "zero-time" Lecturer appointments for each academic year and served as Lecturer for certain laboratory individual study courses.[4]

Plaintiff's employment history prior to 2003 is relatively uneventful and not particularly relevant to this case.  That changed in 2003, when Plaintiff began to accuse the Department of having "double standards" for refusing to hire him as a tenure-track faculty member.[5]  Then, after receiving a negative performance evaluation in 2004, Plaintiff began accusing various faculty members in the Department of bias in faculty hiring, secretly monitoring his activities, and undermining his career.

In Plaintiff's 2004 evaluation, Dr. Richard Quy, the Associate Director of the Department and Plaintiff's direct supervisor, cited multiple problems with Plaintiff's performance and stated that Plaintiff "has done a generally less than satisfactory job managing the MSF this year."[6]  In response, Plaintiff sent a detailed email to Drs. Holcombe and Quy in which he disagreed with his evaluation and concluded, "I believe your performance appraisal is very unfair and has been reached on a

---

2 Moini Depo. 17:25-19:15.  All supporting documents cited herein are included in the Appendix filed with this motion, in accordance with Local Rule CV-7.

3 Moini Depo. 17:25-19:15.  Neither position was a tenured-track faculty position.  Quy Affidavit ¶ 6.

4 Quy Affidavit ¶ 6.  All of Plaintiff's compensation was related to his primary staff appointment as a Senior Research Scientist.  *Id.*

5 Moini Depo. Exh. 4.

6 Moini Depo. Exh. 7.  Dr. Quy cited to personnel turnover in the MSF, failure to communicate effectively with Department management regarding equipment projects, and cost overruns.  The evaluation concluded, "Mehdi has provided superior performance in the past in maintaining the MSF and making it a top quality university facility.  The chairman's office has full confidence that he will regain this level of performance in the future."  *Id.*

personal basis rather than facts and actual job performance."[7]  Plaintiff then complained of "bias" by

Dr. Holcombe to Dean Mary Ann Rankin and Dr. Steve Martin (the incoming Department Chair).[8]

Plaintiff alleged that the "main reasons for this bias" included: Plaintiff witnessing a sexual

relationship involving another faculty member, Dr. David Laude, in 1990 combined with Drs.

Holcombe and Laude's "strong ties"; intolerance of a few faculty members to diversity and "their

unhappiness toward my scientific and professional achievements"; and Plaintiff's "consistent desire

to join the rank of tenured faculty."[9]

     Plaintiff's allegations against Department faculty members continued after Dr. Martin took

over as Department Chair in the fall of 2004.[10]  Soon thereafter, Dr. Martin appointed a committee to

provide oversight of the MSF and the Nuclear Magnetic Resonance lab (the "NMR") –two of the

Department's primary scientific support facilities.[11]  Plaintiff resisted Dr. Martin's oversight efforts

and repeatedly complained to Dr. Martin about faculty oversight of the MSF.[12]  Plaintiff particularly

objected to any involvement by Dr. Jennifer Brodbelt, asserting that her involvement would

"represent a conflict of interest" given that he had allegedly witnessed a relationship between Drs.

Brodbelt and Laude 16 years prior.[13]

     Around this same time, Plaintiff met with Jeff Graves, the University's Vice President from

Institutional Compliance, and complained that Drs. Holcombe and Brodbelt were conducting secret

surveillance of his office and lab.  According to Plaintiff, Drs. Brodblet did this "1) [t]o get rid of me

to cover up their well known relationship and to revenge my last year complaint to the Dean, and

---

7 Moini Depo. Exh. 8.
8 Moini Depo. Exh. 9 at 1.
9 Moini Depo. Exh. 9 at 1.
10 Martin Affidavit ¶ 2.
11 Martin Affidavit ¶ 3.
12 Moini Depo. Exhs. 10, 12.
13 Moini Depo. Exh. 12.  This is the same relationship he referred to in his 2004 conversation with Dean Rankin and
Dr. Martin, although he had not previously named Dr. Brodbelt as the other faculty member.  Moini Depo. 108:17-

2) to takeover my state-of-the-art laboratory ….”[14]  Mr. Graves responded that “it is the prerogative of management (Dr. Quy and Dr. Martin) to determine the best methods of management of the Mass Spec. facility, and because Dr. Brodbelt is the faculty member with expertise in this area, it seems appropriate that she be on the faculty oversight committee.”[15]  Mr. Graves also found Plaintiff’s allegations of witnessing a relationship between Drs. Laude and Brodbelt more than a decade ago “completely irrelevant” to the issue of faculty oversight.[16]

Plaintiff did not make any additional complaints for the next year-and-a-half, during which he received positive performance evaluations.[17]  In the fall of 2007, however, Plaintiff again began lodging multiple complaints against various faculty members after he was denied an Adjunct Faculty appointment, removed from the email list for professors, criticized in the Department’s draft strategic plan, and notified of his pending performance evaluation, all of which he would later allege were discriminatory acts.

On August 30, 2007, Plaintiff informed Dr. Martin that he would like to apply for an Adjunct Professor position.[18]  Dr. Martin informed Plaintiff that the Department “would not be able to accommodate your request for two reasons.  First, as we aren’t seeking Adjunct Professors, there aren’t any positions open for which you can apply.  Secondly and most importantly, last spring we began an effort to scrutinize those who held that title in our Department.  A decision was made that

---

110:10, Exh. 9.

14 Moini Depo. Exh. 13 at 2.  Plaintiff also complained that Drs. Holcombe, Laude, and Brodbelt “have been the major stumbling blocks for my advancement to the rank of tenured track faculty in their division.”  *Id.*

15 Moini Depo. Exh. 13 at 1.

16 Moini Depo. Exh. 13 at 1.  It should be noted that Plaintiff admits this purported event  was never brought up again by Drs. Laude or Brodbelt in the intervening 16 years.  Moini Depo. 27:14-21.

17 Moini Depo. Exh. 14.  In Plaintiff’s July 11, 2006 evaluation, Dr. Quy noted that Plaintiff’s “management performance has improved this year,” particular in the areas of communication with higher management.  The evaluation also noted, “He has made some improvement in his supervision and relationships with his employees, but more progress in this critical area is needed.”  *Id.*

18 Moini Depo. Exh. 15.

we would (re)appoint only those who held a faculty title at another institution of higher education as adjunct faculty.  As a result, several adjunct appointments were not renewed."[19]

Then, on September 18, 2007, Plaintiff received an email that he had been removed from the Department's email list for professors.[20]   John Baxendale, the Department's Administrator, explained the change:  "Yesterday I undertook a general cleanup of the various listserves. ... As there are communications that go out to that list that are intended only for voting faculty, I removed a number of people including a few other lecturers and several staff.  I did ensure that everyone remained on, or was added to the appropriate list (either cmlect or cmadm)."[21]

In the fall of 2007, an initial draft of the Department's strategic plan was released by the Strategic Planning Committee – a committee initiated by Dr. Martin and which consisted of eleven faculty (including Dr. Brodbelt).[22]  The first draft of the plan included language critical of the MSF, including references to "ongoing concerns" about its service, "performance and quality control issues," and "constant turn-over of the professional and technical staff."[23]  The draft plan further recommended "an evaluation of the departmental mass spectrometry facility to determine what actions should be taken and make recommendations to the chair for implementation."[24]   After Plaintiff saw the draft plan, he emailed the committee chair, Dr. Eric Anslyn, and complained that the draft "contains unfair, harsh criticism" of the MSF.[25]  Dr. Anslyn responded, "Don't kill the messenger here.  I have put into the document the general sentiments of the strategic planning committee."[26]

---

19 Moini Depo. Exh. 16.
20 Moini Depo. Exh. 17.
21 Moini Depo. Exh. 17.
22 Moini Depo. Exh. 19; Martin Affidavit ¶ 4.
23 Moini Depo. Exh. 19.
24 Moini Depo. Exh. 19.
25 Moini Depo. Exh. 18.
26 Moini Depo. Exh. 18.  On September 15, 2007, Plaintiff emailed his concerns to all of the members of the

Soon thereafter, Dr. Brodbelt emailed Dr. Martin addressing Plaintiff's concerns, including her opinion that the draft plan seemed "rather harsh"[27] and that Plaintiff "was understandably upset."[28]   Dr. Martin forwarded Dr. Brodbelt's email to Dr. Anslyn and stated, "I think [Dr. Brodbelt's] balanced comments merit reading and careful consideration as we move forward with improving or [sic] departmental facilities."[29]  The language in the strategic plan regarding the MSF was changed in the final version to be less critical of the MSF.[30]  Plaintiff would later blame Dr. Brodbelt for the inclusion of the harsh language in the initial draft.

However, Plaintiff did not file any formal complaints until after he was informed of his impending performance review.  On the morning of Wednesday, October 3, 2007, Dr. Quy sent Plaintiff an email seeking to schedule Plaintiff's performance review for that Friday, October 5.[31] Plaintiff did not immediately respond to Dr. Quy.  Rather, early that afternoon, Plaintiff submitted a complaint to Dr. Martin alleging bias in the Department, as evidenced by, among other things: (1) the draft strategic plan, (2) his removal from the professor email list, (3) not being interviewed for tenure track positions, (4) monitoring devices allegedly being planted in his office, and (5) faculty undermining his attempts to obtain a tenure-track position at other universities.[32]  Plaintiff further alleged that all of this was orchestrated by Drs. Laude and Brodbelt in retaliation for his witnessing their relationship 16 years prior.[33]

---

Strategic Planning Committee, excluding Drs. Brodbelt and Karen Browning.  Moini Depo. Exh. 21.
27 Martin Affidavit ¶ 5, Exh. 1.
28 Martin Affidavit ¶ 5, Exh. 1.
29 Martin Affidavit ¶ 5, Exh. 1.
30 Moini Depo. Exh. 22.
31 Moini Depo. Exh. 24.
32 Moini Depo. Exh. 26.
33 Moini Depo. Exh. 26.

Later that evening, Plaintiff replied to Dr. Quy's request for an evaluation meeting and asked that the meeting be postponed a week to October 12.[34]  Dr. Quy responded that he and Dr. Martin would be "happy" to reschedule and the meeting was set for October 18.[35]  While this meeting was pending, Plaintiff applied for an open tenure-track faculty position in the Department.[36]

On October 17, 2007 – the day before his performance review with Drs. Martin and Quy – Plaintiff filed a formal complaint with Linda Millstone, the Director of Equal Opportunity Services ("EOS") at the University, in which he alleged national origin discrimination and retaliation against Drs. Martin, Quy, Brodbelt and Browning based on the same adverse employment actions as those listed in his October 3 complaint to Dr. Martin.[37]  Plaintiff also included new allegations of "xenophobia" in the Department, including that a former Department Chair, Dr. Hackert (who was purportedly a Christian), prayed at a single departmental lunch meeting in 2002 and that Plaintiff had received an email referring to a visiting scientist from Iran as "a strange Iranian visitor."[38]  Plaintiff further alleged that, after the terrorist attacks on September 11, 2001, he was followed by men in unmarked cars, there were police officers patrolling the halls near his office and lab, and he was excluded from departmental meetings regarding security.[39]

In a later supplement to Ms. Millstone, Plaintiff also alleged animosity based on national origin by numerous faculty and staff, including two former Department Chairs, Drs. Holcombe and

---

34 Moini Depo. Exh. 23.  Plaintiff further requested that Dr. Quy send him a copy of the evaluation in advance. Moini Depo. Exh. 23.  Dr. Quy declined to provide Plaintiff a copy of his evaluation in advance, stating, "In the seven years I have been in this position, I have never given you or any of my direct reports a completed copy of my evaluation in advance of the evaluation meeting."  Moini Depo. Exh. 27.
35 Moini Depo. Exh. 27.
36 Martin Affidavit ¶ 6, Exh. 2.
37 Millstone Affidavit ¶ 3, Exh. 1.  Plaintiff had previously submitted an unsigned version of his complaint to Ms. Millstone by email on October 9, 2007.
38 Moini Depo. Exh. 28 at 4-5, 12-13.; *see also* Moini Depo. 63:4-10.
39 Moini Depo. Exh. 28 at 4-5.

Hackert, as well as Drs. Martin, Quy, Laude, Brodbelt and Browning.[40] Plaintiff blamed Dr. Quy's "harsh treatment" on the fact that he was formerly in the military and because he had a son in the military during a war.[41] Plaintiff did not make any specific allegations against the other faculty regarding any animosity on the basis of national origin.

Drs. Quy and Martin did hold their performance review with Plaintiff on October 18, 2007. Dr. Quy summarized Plaintiff's performance as follows: "Mehdi makes a strong positive contribution to the department, but his overall performance requires some improvement, principally because of the need to improve his personnel supervision and management performance and because of the need to change procedures sufficiently to ensure the department's equipment is being used to its full potential across the university community."[42] Dr. Quy went on to point out the continued concerns with MSF personnel shortages, Plaintiff's management style, and collaboration with other University scientists and programs to increase usage of the MSF facilities.[43]

On December 12, 2007, Moini filed another formal complaint with Ms. Millstone alleging that his performance evaluation was in retaliation for his previous complaint against, among others, Drs. Martin and Quy. [44] In his second complaint, Plaintiff addressed the criticisms in his evaluation and stated, "I believe the real reason for fabricating these lies was because of the bias in the Chairman's Office against me as an Iranian/American during a very tense period in the US history when US/Iran War Drums were beating."[45]

---

40 Millstone Affidavit ¶ 16, Exh. 14.
41 Millstone Affidavit ¶ 16, Exh. 14.
42 Moini Depo. Exh. 29. On November 9, 2007, Plaintiff provided a formal response to his evaluation to Drs. Martin and Quy.  In his memorandum, Plaintiff alleged that his evaluation was unduly harsh and was retaliatory in response to his criticisms of the draft strategic plan and for exposing the Laude/Brodbelt relationship. Moini Depo. Exh. 32
43 Moini Depo. Exh. 29.
44 Millstone Affidavit ¶ 8, Exh. 6.
45 Moini Depo. Exh. 33 at 3.

*University Defendants' Motion for Summary Judgment*                                    8

Ms. Millstone proceeded to investigate Plaintiff's formal complaints, which included obtaining witness statements from Drs. Martin, Brodbelt, Quy and Browning and conducting over 20 witness interviews of faculty and staff.[46] On January 30, 2008, Ms. Millstone submitted her findings regarding Plaintiff's October 17 complaint to Dr. Steven Leslie, Executive Vice President and Provost, and provided a separate memorandum for each of the four named individuals.[47] As to each individual, Ms. Millstone found insufficient evidence to support Plaintiff's claims. On February 19, 2008, Ms. Millstone provided Dr. Leslie her findings as to Plaintiff's December 12 complaint of retaliation, again finding that there was insufficient evidence to support Plaintiff's claims.[48]

On March 20, 2008, Dr. Leslie rendered his decision regarding Plaintiff's October 17 complaint and concluded "that the evidence provided to me does not support your allegation of discrimination or retaliation on the basis of national origin."[49] And on April 10, 2008, Dr. Leslie responded to Plaintiff's December 12 complaint related to his performance evaluation and concluded that the evidence did not support Plaintiff's claim.[50] In between these two decisions, Plaintiff was informed that he was not selected for the tenure-track faculty position for which he applied in October.[51]

While Plaintiff's complaints were being investigated, Plaintiff's performance as MSF Director continued to deteriorate. On January 4, 2008, Dr. Quy provided Plaintiff a memorandum to follow-up on two issues raised in his evaluation and directed Plaintiff to provide certain monthly usage reports (as discussed in his performance review) and to contact other University scientists to

---

46 Millstone Affidavit ¶¶ 4-7, Exhs. 2-5.
47 Millstone Affidavit ¶¶ 4-7, Exhs. 2-5.
48 Millstone Affidavit ¶¶ 9-11, Exhs. 7-9.
49 Moini Depo. Exh. 41.
50 Moini Depo. Exh. 42.
51 Martin Affidavit ¶ 9, Exh. 3.

increase usage of certain MSF instruments.[52] On February 18, 2008, Dr. Quy gave Plaintiff a letter of reprimand addressing Plaintiff's failure to cooperate with Dr. Quy and the lack of progress in providing the requested usage reports, nothing both that multiple requests had been made of Plaintiff to provide these reports and that Plaintiff had repeatedly failed to do so.[53]

The severity of the problems with MSF management became clearer following the "Shop Survey" commissioned by Dr. Martin to examine the seven service centers within the Department. The anonymous survey asked both departmental faculty and graduate students, post docs, and other staff to provide numerical ratings of the service centers in five categories and solicited comments as to each service center.[54] The MSF received the lowest score of any of the seven service centers on all five of the categories among both faculty and non-faculty.[55]

On April 29, 2008, the seven faculty members of the MS-NMR Oversight Committee met to discuss various issues, including the result of the departmental shop survey. During the meeting, "[d]iscussion immediately focused on the need to change MS facility leadership. … There was unanimous agreement that change in leadership is mandatory. [Dr.] Quy explained that the correct vehicle for the employee category of Dr. Moini was not to reappoint him in the fall. The committee recommended that the appropriate action step was to begin the process."[56]

On June 24, 2008, Drs. Martin and Quy submitted a memorandum to Dr. Leslie requesting approval to non-renew Plaintiff's appointment.[57] The memorandum described the reasons why the request was being made, including Plaintiff's failure to maintain a qualified professional staff, overspending on equipment grant and failing to upgrade primary instruments, failure to collaborate

---

52 Moini Depo. Exh. 34.
53 Moini Depo. Exh. 37.
54 Def.'s ROG Responses #11.
55 Quy Affidavit ¶ 8, Exh. 1.
56 Quy Affidavit ¶ 8, Exh. 1.

effectively with faculty and other University scientists, and failure to secure external funding for research programs.[58]  The memorandum also cited Plaintiff's failure to improve in these critical performance areas, as well as the recent shop survey results in which the MSF was the lowest-rated service center.[59]  The non-renewal request was approved by Dr. Leslie, as well as Dean Mary Ann Rankin and Julien C. Carter, Associate Vice President for Human Resource Services.[60]

On July 1, 2008, Dr. Quy informed Plaintiff that his appointment as Senior Research Scientist would not be renewed for the next fiscal year and that his employment with the University would end on August 31, 2008.[61]  That same day, Dr. Rambod Daneshfar (an Iranian) was named Interim Director of the MSF.[62]

On July 7, 2008, Plaintiff submitted a formal complaint to Ms. Millstone alleging retaliation and "perhaps age discrimination" in connection with his non-renewal.[63]  Ms. Millstone again investigated the allegations and found insufficient support for Plaintiff's claims.[64]

On July 11, 2008, Plaintiff submitted his initial Charge of Discrimination with the EEOC (EEOC #36A-2008-00322), in which he alleged national origin discrimination and retaliation.[65]  On November 19, 2008, Plaintiff filed an amended EEOC charge, in which he alleged, among other things, that the fact that Dr. Daneshfar was younger than him was evidence of age discrimination.[66]

---

57 Quy Affidavit ¶ 10, Exh. 3.
58 Quy Affidavit ¶ 10, Exh. 3.
59 Quy Affidavit ¶ 10, Exh. 3.
60 Quy Affidavit ¶ 10, Exh. 3.
61 Moini Depo. Exh. 45.  In the initial memorandum given to Plaintiff, Dr. Quy included the reasons for the decision.  Moini Depo. Exh. 45.  Plaintiff then requested an amended non-renewal notification – he thought that a notification that did not expressly criticize his performance would make it easier to find another job.  Moini Depo. 288:11-290:10.  Because the University was not required to provide reasons for non-renewal of staff, Dr. Quy subsequently provided Plaintiff with a replacement notification that did not include the reason for the decision. Moini Depo. Exh. 46.
62 Quy Affidavit ¶ 11, Exh. 4; Moini Depo. 120:14-121:4.
63 Millstone Affidavit ¶¶ 12, Exh. 10.
64 Millstone Affidavit ¶¶ 13-15, Exhs. 11-13.
65 Moini Depo. Exh. 48.
66 Moini Depo. Exh. 50.

And on January 22, 2009, Plaintiff submitted yet another amended charge, which alleged that the newly named Director of the MSF, Dr. Karin Keller, was younger and less qualified.[67]

On November 11, 2009, the EEOC sent Plaintiff a letter providing its preliminary determination. The EEOC concluded, "The available information was insufficient to conclude that your national origin and age were factors in your employment experience or that the employer acted against you in retaliation against any activity protected by the laws we enforce. Rather, the available evidence indicates that your contract was not renewed due to deficiencies as a Director that had been addressed with you since 2004."[68]    The EEOC further noted the "lack of direct evidence of discrimination and the apparent lack of witnesses who could provide specific, relevant information to support your claims."[69]    The EEOC issued a corresponding Dismissal and Notice of Rights to Plaintiff on December 17, 2009.[70] Plaintiff filed this lawsuit on March 18, 2010. (Dkt. # 1.)

### III.    ARGUMENT

**A.    Plaintiff Cannot Establish A *Prima Facie* Claim of National Origin or Age Discrimination.**

"Assuming a plaintiff has exhausted his administrative remedies, he may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).   When a plaintiff does not allege any direct evidence of discrimination (as here), courts apply the *McDonnell Douglas* burden-shifting analysis. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  "To survive summary judgment under *McDonnell*

---

67 Moini Depo. Exh. 51.
68 Moini Depo. Exh. 52 at 1.
69 Moini Depo. Exh. 52 at 2.
70 Moini Depo. Exh. 53.

*Douglas*, the plaintiff must first present evidence of a *prima facie* case of discrimination." *Davis*,

383 F.3d at 317.

To establish a *prima facie* case of employment discrimination, Plaintiff must show that:

(1) he is a member of a protected class; (2) he was qualified for his position; (3) he was subject to an

adverse employment action; and (4) he was replaced by someone outside the protected class, or, in

the case of disparate treatment, that others similarly situated were treated more favorably. *Okoye v.*

*Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *see also Rachid v. Jack*

*In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (similar standard for age discrimination).

> If the plaintiff makes a prima facie showing, the burden then shifts to
> the employer to articulate a legitimate, nondiscriminatory or
> nonretaliatory reason for its employment action. … If the employer
> meets its burden of production, the plaintiff then bears the ultimate
> burden of proving that the employer's proffered reason is not true but
> instead is a pretext for the real discriminatory or retaliatory purpose.
> To carry this burden, the plaintiff must rebut each nondiscriminatory
> or nonretaliatory reason articulated by the employer.

*McCoy* , 492 F.3d at 557.

Here, Plaintiff does not allege any direct evidence of national origin or age discrimination,

but rather admits that Drs. Martin and Quy never made any negative comments to him about his

national origin or his age.[71] Thus, this brief will address the *McDonnell Douglas* analysis as to each

of the alleged adverse employment actions.

    *i.*   *Non-renewal of Plaintiff on July 1, 2008*

As to his non-renewal, Plaintiff cannot establish the fourth element of a *prima facie* national

origin claim because he was not replaced by someone outside his protected class. Dr. Daneshfar,

who is Iranian himself, was named Interim Director of the MSF.[72] Plaintiff may point to the fact that

---

71 Moini Depo. 114:4-115:22.
72 Quy Affidavit ¶ 11, Exh. 4; Moini Depo. 120:14-121:4.

Dr. Keller, who is not Iranian, was eventually named as his permanent replacement.  However, courts do consider an immediate, interim replacement in determining whether a Plaintiff has established a *prima facie* claim.  *See Grennell v. Gastr. Assocs., P.A.*, 2008 WL 2882618, at *4 (S.D. Miss. July 25, 2008) (finding *prima facie* claim based on race of initial interim replacement, not final replacement); *Hart v. Edwards*, 2009 WL 691069, at *7 (M.D. Ga. Mar. 11, 2009) (same).

Even if Plaintiff could make out a *prima facie* claim, both his national origin and age[73] discrimination claims still fail because the University had a legitimate, nondiscriminatory reason for deciding not to renew his appointment.  As is clear from the record, Plaintiff was not renewed due to his poor job performance, as evidenced by (1) his October 18, 2007 evaluation; (2) his February 18, 2008 letter of reprimand; (3) the departmental survey; and (4) unanimous support for his removal from the MS-NMR Oversight Committee.[74]  Given that Plaintiff admits that Drs. Martin and Quy never made any negative comments about his national origin or his age,[75] Plaintiff has no basis to argue that the proffered reasons for his non-renewal were pretextual.

       *ii.*    *Titles of Lecturer and Adjunct Faculty*

In his Charge, Plaintiff also alleged discrimination based on "removal" of his Lecturer and Adjunct Faculty titles.[76]  Plaintiff Lecturer appointment expired on May 31, 2008, and was not renewed the subsequent academic year because he was no longer employed with the University.[77]  Thus, there is no factual support for the argument that Plaintiff's Lecturer title was "removed," and Plaintiff, therefore, cannot meet the third element of a *prima facie* claim as to this purported adverse employment action.  But even if he could, Plaintiff cannot establish the fourth element, since there is

---

73 Solely for purposes of this motion, the University Defendants do not dispute that Plaintiff has established a *prima facie* age discrimination claim.
74 Moini Depo. Exhs. 29, 37; Quy Affidavit ¶¶ 8, 9, Exhs. 1, 2.
75 Moini Depo. 114:4-115:22.
76 Moini Depo. Exh. 48.

no evidence that he was replaced as Lecturer by someone outside the protected class. Although Plaintiff cites to his replacements as MSF Director as evidence of discrimination on the basis of national origin (Dr. Keller) and age (Dr. Daneshfar), neither of those individuals served as Lecturers.[78]

As to the "removal" of Plaintiff's purported title of Adjunct Faculty, Plaintiff was never an adjunct. Rather, Plaintiff applied for an adjunct position on August 30, 2007, and was informed by Dr. Martin that he was not eligible for such a position on September 11, 2007.[79] Furthermore, any claim based on such actions is time barred, as ordered by this Court.[80]

### iii.    Removal from the Professor Email List

Plaintiff also complains that his removal from the professor email list was discriminatory.[81] Plaintiff cannot establish a *prima facie* claim for this action because removal from an email list is not an adverse employment action. Under Fifth Circuit law, adverse employment actions sufficient to form the basis for a discrimination claim are limited to "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy*, 492 F.3d at 559 (quotations omitted).[82] Clearly, removal from an email list is not an ultimate employment decision.

And even if it was, the evidence shows that the University had a legitimate, non-discriminatory reason for Plaintiff's removal from the list, which is that he and the rest of the lecturers removed from the list were not a tenure-track faculty members.[83]

---

77 Quy Affidavit ¶¶ 5, 7.
78 Def.s' ROG Response # 6 (attaching UT-Moini006115, List of Lecturers since 2005).
79 Moini Depo. Exhs. 15, 16.
80 Order, Dkt. # 27. And even if there was no time bar, the email from Dr. Martin clearly provides a non-discriminatory reason for his denial of Plaintiff's request, which would justify dismissal of this claim.
81 Moini Depo. Exh. 48.
82 The standard for adverse employment actions that will support discrimination claims is different than that for retaliation claims. *Compare McCoy*, 492 F.3d at 559, *with Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).
83 Moini Depo. Exh. 17.

iv.    *2007 Application for Tenure-Track Position*

Plaintiff also alleges discrimination based on his failure to be hired for the tenure-track position in the 2007-08 academic year.  For the purposes of this motion, the University Defendants do not dispute that Plaintiff has established a *prima facie* failure-to-hire claim on the basis of age and national origin, since the University admittedly hired someone younger than Plaintiff who was not Iranian.  *See Bright v. GB Bioscience Inc.*, 305 Fed.Appx. 197, 202 n.4 (5th Cir. 2008) (stating standard for *prima facie* failure-to-hire claim).  Thus, the burden is on the University to provide one or more non-discriminatory reasons for its decision.  The burden on the University "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).  Once reasons have been offered, the burden falls once again on Plaintiff to offer evidence "that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence."  *Bright*, 305 Fed.Appx. at 202 (citing *Reeves*, 530 U.S. at 143).

The University has met its burden to provide legitimate, non-discriminatory reasons for not hiring Plaintiff.  First, Plaintiff identified three outside references in his application, but none of these individuals submitted the requisite letters on his behalf.[84]  Because his application was incomplete, Plaintiff was not considered by the search committee.[85]  Second, the person selected for the position, Dr. Lauren Webb, was a better candidate, since she possessed superior academic credentials, had recently secured $500,000 in independent research funding, and had research

---

[84] Martin Affidavit ¶¶ 6-7, Exh. 2.
[85] Martin Affidavit ¶ 7.

interests that fit soundly with the areas of strength and growth outlined in the department's strategic plan.[86]  Plaintiff has no basis to challenge these reasons and, therefore, has no failure-to-hire claim.

**B.    Plaintiff Cannot Establish A *Prima Facie* Claim of Retaliation.**

For Plaintiff to establish a *prima facie* claim of retaliation under Title VII, he must show: (1) that he engaged in protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action.  *Evans v. City of Houston*, 246 F .3d 344, 352 (5th Cir. 2001).  The same burden-shifting applies in retaliation cases, such that if the employer offers a legitimate, non-retaliatory reason for its action, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real [] retaliatory purpose."  *McCoy*, 492 F.3d at 557.

The University Defendants do not dispute that Plaintiff engaged in protected activity under Title VII by filing numerous internal EOS complaints against various departmental faculty members in the fall of 2007.  For the purpose of this motion, the University Defendants also do not dispute that the alleged retaliatory actions constitute adverse employment actions under the *Burlington Northern* standard.[87]  However, there is no evidence that a causal link existed between the protected activity and any of the alleged adverse actions.

     *i.    Non-renewal of Plaintiff on July 1, 2008.*

There is simply no evidence of any causal connection between Plaintiff's non-renewal and his protected activity.  Any attempt by Plaintiff to rely on the temporal proximity between his prior complaints and his non-renewal would be unavailing.  Although the Fifth Circuit has held that

---

86 Martin Affidavit ¶ 8.

87 To establish an adverse employment action to support a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).

"[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation," *Ikossi-Anastasiou v. Bd. of Sups. of La. State Univ.*, 579 F.3d 546, 549 (5th Cir. 2009), the period of time between the two events must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Periods of more than a couple of months have been held to be insufficient to establish causality. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (five months insufficient); *Ajao v. Bed Bath and Beyond, Inc.*, 265 Fed.Appx. 258, 265 (5th Cir. 2008) (four months insufficient); *see also Clark Cnty.*, 532 U.S. at 273 (citing cases holding three- and four-month periods insufficient).

Here, Plaintiff's last protected activity prior to his non-renewal was his December 12, 2007 complaint. [88] Yet, Plaintiff submitted this complaint more than six months prior to the decision regarding his non-renewal, which is too remote to support a causal inference of retaliation. Even if Plaintiff could set forth a *prima facie* retaliation claim, it nevertheless fails because the University had a legitimate, non-discriminatory reason for deciding not to renew Plaintiff's appointment. (*See* Section III.A.i, *infra*.)

> ii.    *Titles of Lecturer and Adjunct Faculty*

As to Plaintiff's role as Lecturer, that appointment continued through May 31, 2008, and was not renewed the subsequent academic year because he was no longer employed with the University.[89] As with his non-renewal, there is simply no evidence of any causal connection to any protected activity. Furthermore, there is certainly no evidence rebutting the legitimate, non-discriminatory reasons proffered by the University for its actions.

---

88 Millstone Affidavit ¶ 8, Exh. 6. Plaintiff may also cite to his February 18, 2008, memorandum to Dean Rankin complaining of "demeaning actions" by Dr. Quy. Even if this is considered, it is too far removed from his non-renewal (over four months) to be considered evidence of a causal connection.

In addition to being time-barred, Plaintiff's allegations regarding the Adjunct Faculty position cannot support a retaliation claim because Plaintiff was denied the adjunct position on September 11, 2007, but did not engage in any protected activity until October 17, 2007.[90]   And even if Plaintiff had engaged in activity protected by Title VII prior to September 11, 2007 and could establish a causal connection, the University had a legitimate, non-discriminatory reason for its decision as to the adjunct position, as stated in Dr. Martin's email to Plaintiff.[91]

     *iii.*    *Removal from the Professor Email List*

Similarly, Plaintiff was removed from the professor's email list on September 18, 2007, but did not engage in protected activity until October 17, 2007.[92]   Thus, his removal from the list could not have been retaliatory.  And again, University had a legitimate, non-discriminatory reason for its decision to remove Plaintiff (and others) from the list.[93]

     *iv.*    *2007 Application for Tenure-Track Position*

Plaintiff applied for a tenure-track faculty position in October 2007, and he was notified that he was not chosen for the position on March 25, 2008.[94]   As with Plaintiff's non-renewal, the temporal proximity between his last protected activity in December 2007, and the decision on his application in March 2008 – three months – is too remote to be evidence of a causal connection.  *See Clark Cnty.*, 532 U.S. at 273.  Furthermore, Plaintiff cannot rebut the legitimate, non-retaliatory reasons for hiring a different candidate – his application was incomplete and he was not the most qualified candidate.[95]

---

89 Quy Affidavit ¶¶ 5, 7.
90 Moini Depo. Exh. 16; Millstone Affidavit ¶ 3, Exh. 1.  Plaintiff's prior departmental complaints were not protected activity under Title VII, as they did not allege discrimination on the basis of a protected class.
91 Moini Depo. Exh. 16.
92 Moini Depo. Exh. 17.
93 Moini Depo. Exh. 17.
94 Martin Affidavit ¶¶ 6, 9.
95 Martin Affidavit ¶¶ 7, 8.

C.    **Plaintiff's Claim Regarding Negative Job References Is Barred By His Failure to Exhaust His Administrative Remedies.**

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charges." *Clayton v. Rumsfeld*, 106 Fed. Appx. 268, 271 (5th Cir. 2004) (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir.1985)).   Thus, the Fifth Circuit has repeatedly found that plaintiffs may not pursue Title VII claims that were not included in the charge. *See, e.g., Fine v. GAF Chemical Corp.*, 995 F.2d 576, 577-78 (5th Cir. 1993); *Young v. City of Houston*, 906 F.2d 177 (5th Cir. 1990).

In his complaint, Plaintiff alleges that Drs. Martin, Brodbelt and Quy provided him negative job references, and that was both discriminatory and retaliatory.  (Compl. ¶ 52.)  However, it is clear that Plaintiff never made any such claim in either his original EEOC Charge, or his two subsequent amendments.[96]   Nor did the EEOC ever investigate such a claim.[97]   Plaintiff, therefore, did not exhaust his administrative remedies regarding any claim regarding negative job references, and that claim should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the University Defendants respectfully request that this Court grant their Motion for Summary Judgment against Plaintiff, dismiss Plaintiff's claims, order that Plaintiff take nothing by his action, and award Defendants such further relief to which they are entitled.

---

96 Moini Depo. Exhs. 48, 50, 51.
97 Moini Depo. Exh. 52.

Dated:  April 15, 2011                          Respectfully submitted,

                                                GREG ABBOTT
                                                Attorney General of Texas

                                                DANIEL T. HODGE
                                                First Assistant Attorney General

                                                BILL COBB
                                                Deputy Attorney General for Civil Litigation

                                                DAVID C. MATTAX
                                                Director of Defense Litigation

                                                ROBERT B. O'KEEFE
                                                Chief, General Litigation Division

                                                 _/s/ Darren G. Gibson_____
                                                **DARREN G. GIBSON**
                                                Texas Bar No. 24068846
                                                Darren.Gibson@oag.state.tx.us
                                                Assistant Attorney General
                                                Office of the Attorney General
                                                General Litigation Division - 019
                                                P.O. Box 12548, Capitol Station
                                                Austin, Texas 78711-2548
                                                (512) 463-2120
                                                (512) 320-0667 FAX

                                                ***ATTORNEYS FOR DEFENDANTS***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of University Defendants' Motion for Summary Judgment was served via the *CM/ECF system* on April 15, 2011, to:

Kala S. Dumont
Law Offices of Gaul and Dumont
924 Camaron
San Antonio, Texas 78212
*Attorney for Plaintiff*

   /s/ Darren G. Gibson
**DARREN G. GIBSON**
Assistant Attorney General