# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

MEHDI MOINI,

                      **Plaintiff,**

-vs-                                                    Case No.  A-10-CA-180-SS

UNIVERSITY OF TEXAS AT AUSTIN;
WILLIAM C. POWERS, JR. in His Official
Capacity as President; STEPHEN F. MARTIN;
RICHARD B. QUY, and JENNIFER S.
BRODBELT,

                      **Defendants.**

---

## <u>O R D E R</u>

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants' Motion for Summary Judgment [#36], Plaintiff Mehdi Moini's response [#42] thereto, and Defendants' reply [#44].  Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and order GRANTING Defendants' motion.

### Background

*Post hoc ergo propter hoc*—a principle which states if one event occurs after another, the second event must have been caused by the first—is the theme of Moini's discrimination and retaliation claims.  Unfortunately, it is also a well-known logical fallacy.  Because Moini has failed to provide evidence the adverse employment actions taken against him were the result of his Iranian national origin, age, or participation in protected activity; and because Moini has failed to rebut the

legitimate, non-discriminatory reasons given by Defendants for their actions, the Court grants summary judgment in favor of Defendants.

I.     **Factual Background**

The Court has described Moini's factual allegations in this case on two prior occasions. *See* Order [#27]; Order [#20].  The Court incorporates the relevant allegations by reference, and discusses here only the record evidence necessary to resolve Defendants' motion.

In short, Moini claims his former employer, Defendant University of Texas at Austin, discriminated against him on the basis of his national origin and age, and in retaliation for making complaints of discrimination.  Moini held an appointment at the University, which was renewed annually from 1998 until his termination in 2008.  Most notably, starting in 2000, Moini served as Director of Mass Spectrometry for the Department of Chemistry and Biochemistry.

Moini complains about a litany of acts and events he claims were discriminatory and/or retaliatory, including: removal of his Adjunct Professor title in August 2007; his removal from the Department's 'cmprof' email mailing list in September 2007; a reprimand letter he received in February 2008; an unfavorable "shop survey" conducted in March 2008; his not being hired for a tenure-track faculty position in March 2008; removal of his Lecturer title in May 2008; his non-renewal as Directory of Mass Spectrometry in July 2008; his interim replacement as Director by Rambod Daneshfar in July 2008; his permanent replacement as Director by Karin Keller in December 2008; denial of access to the faculty grievance procedure for his non-renewal; and negative job references provided to his prospective employers.  Pl.'s Resp. [#42] at 3–4.

For their part, Defendants agree most of these acts and events took place.[1]  However, they deny these acts are sufficient to establish Moini's discrimination or retaliation claims for four reasons.  First, Defendants note some of the acts are simply not adverse employment actions upon which Moini can base his claims.  Second, Defendants argue there is no evidence the acts were motivated by Moini's national origin or age, or were taken in retaliation for Moini's engaging in protected activity.  Third, Defendants proffer purportedly legitimate, non-discriminatory reasons for each of Moini's cognizable adverse employment actions.  Finally, Defendants contend some of Moini's claims fail as a matter of law because he did not exhaust his administrative remedies with respect to those claims.

In reply, Moini argues he has established a prima facie case for his claims, and further asserts the reasons proffered by Defendants for their adverse employment actions were merely pretextual.  Finally, he asserts he has sufficiently exhausted his administrative remedies with respect to all of his claims.

For the following reasons, the Court agrees with Defendants.

## Analysis

## I.      Summary Judgment — Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and

---

[1] Defendants do dispute Moini's final allegation, that they provided negative job references to prospective employers. *See* Defs.' Reply [#44] at 7 ("Plaintiff has no evidence that he even received negative employment references after September 15, 2007, other than his own assumptions to that effect.").

that the moving party is entitled to judgment as a matter of law.[2] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to

---

[2] Amendments effective December 1, 2010 changed Rule 56, moving language from 56(c) to 56(a), and changing the Rule to read "genuine dispute as to any material fact," rather than "genuine issue as to any material fact." FED. R. CIV. P. 56.

-4-

support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.   Moini's Claims

The Court finds all of Moini's claims fail for (at least) one of three reasons: (1) the acts he complains of are not "adverse employment actions" within the context of the particular claim; (2) he has failed to demonstrate a genuine dispute of material fact on the issue of causation; or (3) he has failed to rebut the legitimate, non-discriminatory reasons proffered by Defendants for their actions.[3]   Accordingly, the Court grants summary judgment in favor of Defendants on Moini's claims.

## A.   Title VII Burden Shifting Framework

"Assuming a plaintiff has exhausted his administrative remedies, he may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).   When a plaintiff bases his or her claims on circumstantial evidence of discrimination, courts analyze those claims under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.*   Under that

---

[3] Because the Court finds Moini's claims fail on these grounds, it does not address Defendants' arguments regarding exhaustion of administrative remedies.

framework, the plaintiff must first establish a prima facie case of discrimination or retaliation. *Id.* "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *Id.* at 557. However, "[t]he employer's burden is only one of production, not persuasion, and involves no credibility assessment." *Id.* "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *Id.*

**B.      Prima Facie Case — Discrimination and Retaliation**

The Supreme Court has cautioned, because the facts of each Title VII case will vary, the prima facie proof required may likewise vary. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973) ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."). In this case, however, the standard Fifth Circuit prima facie elements of discrimination and retaliation are appropriate.

**1.      Discrimination**

To establish a prima facie case of intentional discrimination, Moini must show he: (1) is a member of a protected group; (2) was qualified for his position; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *McCoy*, 492 F.3d at 556. The only elements in dispute in this case are (3) and (4).

**2.      Retaliation**

To establish a prima facie case of retaliation, Moini must show: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id.* at 556–57. The only elements in dispute in this case are (2) and (3).

**3.    "Adverse Employment Action"**

In the Fifth Circuit, there are two different standards for what constitutes an actionable "adverse employment action" under Title VII. In the context of a discrimination claim, only "ultimate employment decisions"—such as hiring, granting leave, discharging, promoting, or compensating—are actionable. *See McCoy*, 492 F.3d at 560 ("[O]ur precedent recognizing only 'ultimate employment decisions' as actionable adverse employment actions remains controlling for Title VII *discrimination* claims . . . .").

The standard is lower for retaliation claims, however. Specifically, for an action to be an "adverse employment action" in the context of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotations omitted).

**C.    Application**

As an initial matter, the Court notes Moini provides no direct evidence of retaliation. Rather, he relies on circumstantial evidence:

> Just as in 2003 when Plaintiff complained of discriminatory acts by Defendants and was then hit with a poor performance evaluation, in 2007 when he complained informally and formally of discrimination in the department he was immediately hit with retaliatory acts which affected the terms, conditions and privileges of his

employment–removal from cmprof email list, removal of titles of Adjunct Professor and Lecturer, failure to promote to Research Professor, nonrenewal, not hired for faculty position in March 2008, and the negative job references.

Pl.'s Resp. [#42] at 7–8.

Because Moini's evidence of retaliatory motive is based entirely on the timing between his complaints and Defendants' actions, the Court first provides a brief timeline of Moini's formal and informal complaints.

1.      **Moini's History of Complaints**

On March 6, 2003, Moini sent an email to Dr. Jennifer Brodbelt, in which Moini expressed his belief the Department had "double standards with respect to [his] desire to join the rank of tenured faculty." Defs.' Mot. Summ. J. [#36], Att. 3 at 2. Although Moini did not mention his national origin or age, he suggested "favoritism" and "personal bias" may have played a part in his not being awarded a faculty title, and noted the lack of diversity in the Department. *Id.* at 3–4.

On July 19, 2004, Moini received a "less than satisfactory" annual performance evaluation. *Id.* at 8, 6–9. The evaluation summarized Moini's performance as follows:

> Mehdi has had mixed results in his performance this year. His technical expertise in the field of mass spectroscopy is superior, and he never fails to provide a superior performance with regard to technical tasks such as equipment selection, teaching, student and staff training, publications, and research. Mehdi's performance has been generally less than satisfactory, however, with respect to maintaining the MSF. Staff turnover within the facility has continued to be high and must be brought under control. . . . Secondly, Medhi must improve his communication with upper management . . . .

*Id.* at 8.

On July 21, 2004, Moini sent an email to his evaluators, Drs. Quy and Holcombe, disagreeing with his evaluation. *Id.* at 10–13. After explaining the reasons why he disagreed, Moini concluded

by stating: "In summary I believe that your performance appraisal is very unfair and has been reached on a personal basis rather than facts and actual job performance." *Id.* at 12.

On August 9, 2004, Moini took his complaints to Dean Mary Ann Rankin and incoming Department Chair Dr. Steve Martin. *Id.* at 14. He complained Dr. Holcombe (outgoing Department Chair) was biased against him because: (1) Moini witnessed a sexual relationship involving coworker Dr. David Laude in 1990; (2) Holcombe and Laude had "strong ties"; (3) "intolerance of a few members of Analytical Division toward diversity and their unhappiness toward [Moini's] scientific and professional achievements"; (4) false accusations against Moini; and (5) Moini's complaint regarding double standards and bias in the Department. *Id.* Moini went on to complain in some detail about the various ways in which he felt he was mistreated. *Id.* at 14–16.

On December 4, 2005, Moini sent Dr. Martin an email in which he complained about the formation of an oversight committee for the Mass Spectrometry facility. *Id.* at 17–20. Moini began by reciting his qualifications, moved on to discuss his accomplishments as Director of Mass Spectrometry, and concluded with an explanation for the high turnover rate of staff in his lab. *Id.*

Moini followed this up on February 28, 2006, with a letter to Dr. Martin. *Id.* at 21. In this letter, Moini objected to the inclusion of Dr. Brodbelt in any potential oversight committee because she was the other participant in the 1990 sexual encounter with Dr. Laude, mentioned in Moini's August 2004 complaints to Dean Rankin and Dr. Martin. *Id.* Moini opined this would represent a "conflict of interest" for Dr. Brodbelt. *Id.*

On July 11, 2006, Moini received a positive performance evaluation, noting continued "superior performance with respect to the technical aspects of his job," and improved performance with respect to maintaining the Mass Spectrometry Facility. Defs.' Mot. Summ. J. [#36], Att. 3 at

26. The evaluation noted Moini's improvement in his relationship with his staff, but observed a continuing trend of high staff turnover, concluding, "there are indications that further progress is needed." *Id.*

After a draft of a Departmental Strategic Plan criticized the Mass Spectrometry Facility, Moini wrote a letter to Dr. Martin. Defs.' Mot. Summ. J. [#36], Att. 4 at 19. The October 3, 2007 letter, entitled "RE: Complaint Against Bias In the Department," indicated Moini's disagreement with the criticisms in the draft Plan. *Id.* In the letter, Moini claimed the "mass spec section of the Strategic plan has been orchestrated by [a] couple of faculty (including Dr. Brodbelt) with a long history of animosity and discrimination against me." *Id.* Moini continued, "[f]rom the time that I witnessed their sexual relationship, these faculty members have attacked me in [sic] every chance that they get." *Id.*

Moini made formal internal complaints with the University's Equal Opportunity Services on October 17, 2007, December 12, 2007, and July 7, 2008. Defs.' Mot. Summ. J. [#36], Att. 10 at 2–14; *id.*, Att. 16 at 2–9; *id.*, Atts. 20–21. After the Director of the Equal Opportunity Services' investigation revealed no discrimination or retaliation, Moini filed formal complaints with the Equal Employment Opportunity Commission on July 11, 2008, November 19, 2008, and January 22, 2009. *Id.*, Att. 6 at 5–8.

## 2. Moini's Timeline of Complaints Fails to Create an Inference of Retaliatory Motive

Moini states this timeline is evidence the adverse actions to which he was subject were connected to his complaints, because "the same pattern and practice engaged in by Defendants in 2003, were used again in 2007." Pl.'s Resp. [#42] at 8. This is unpersuasive for three reasons.

First, the proposition Moini complained only in 2003 and 2007 is false. As outlined above, Moini seems to have complained fairly regularly, starting on March 6, 2003, and continuing until the present. Second, and related, the notion Moini received poor treatment whenever he complained is also false. For instance, despite his complaints on both December 4, 2005, and February 28, 2006, Moini's July 2006 performance evaluation was positive. Third, even assuming *arguendo* Moini's contentions regarding timing are true, the Court has already noted the logical flaw in Moini's argument: correlation does not imply causation.

"The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotation omitted). Here, the temporal proximity between Moini's complaints and Defendants' adverse employment actions are generally not very close and, as previously noted, there is no strong correlation between the complaints and adverse actions.

It appears Moini has simply picked two years in which both: (1) he complained; and (2) he suffered negative employment actions. From this, Moini asks the Court to conclude Defendants' adverse employment actions were taken for retaliatory reasons. Because there is neither logical nor factual support for Moini's argument, the Court declines to do so.

Thus, the Court finds Moini has failed to provide sufficient evidence of retaliatory motive to survive summary judgment on any of his retaliation claims. Nevertheless, the Court examines each of Moini's claims of discrimination and retaliation in turn.

### 3.    Removal of Adjunct Professor Title

Moini fails to establish a prima facie case of discrimination or retaliation with respect to this act.  Additionally, he fails to rebut Defendants' proffered non-discriminatory reasons for their action.  Consequently, Moini's claims based on this act fail as a matter of law.

Initially, the Court notes its analysis of this claim is complicated somewhat by the apparent lack of precision  surrounding the exact title Moini held, versus the one he sought.  On August 30, 2007, Moini sent a letter to Dr. Steven Martin, Chair of the Department of Chemistry and Biochemistry, indicating his interest in applying for an "Adjunct Professor" position in the Department.  Defs. Mot. Summ. J. [#36], Att. 3 at 28.  In the letter, Moini claims he already held the title of "Adjunct Faculty" in the Department.  *Id.*  Obviously, this suggests "Adjunct Professor" and "Adjunct Faculty" were two distinct positions in the Department.

Dr. Martin's email reply on September 11, 2007, however, casts some doubt on this.  *Id.* at 31.  The subject of the email is "Letter regarding adjunct position," and the first line states in part: "I have received your letter regarding an Adjunct Faculty position."  *Id.*  As noted above, however, Moini indicated he *already* held the title of Adjunct Faculty, and was applying for the (presumably different) position of Adjunct Professor.  Later, explaining why Moini's request was being denied, Dr. Martin's email reads: "First, as we aren't seeking Adjunct Professors, there aren't any positions open for which you can apply."  *Id.*  Dr. Martin's email thus creates the impression the terms "Adjunct Faculty," "Adjunct Professor," and the generic "adjunct position," may have been interchangeable within the Department.[4]

---

[4] Even Moini is not consistent in his use of the terms.  For instance, in a sworn declaration, he states, "my Adjunct Professor title, as displayed on the department webpage, was removed."  Pl.'s Resp. [#42], Att. 8 at 2.

However, the Court is required to view the facts in the light most favorable to Moini. As Moini suggests he already held a position called Adjunct Faculty, and was seeking the separate position of Adjunct Professor, the Court assumes they are two distinct positions.

**a.     No Prima Facie Case**

Nevertheless, Moini fails to establish a prima facie case of either discrimination or retaliation based on this act. First, to the extent Moini complains about his not being hired into a separate Adjunct Professor position, that claim is time-barred by this Court's prior order, setting September 15, 2007, as the "cut-off" date for Moini's claims. *See* Order [#20] at 18. As noted above, Martin sent his email denying Moini's application on September 11, 2007. Because this failure-to-hire claim occurred outside the actionable time period, it is time-barred and must be dismissed.

Second, to the extent Moini is complaining about removal of an existing title, he has failed to establish a prima facie case of either discrimination or retaliation. First, the Court notes it is unclear from the record when Moini's adjunct title was allegedly removed; thus, this claim may be time-barred. Second, the Court has some doubt the removal of an adjunct title, unaccompanied by a loss of pay, duties, or power, constitutes an adverse employment action in the context of either discrimination or retaliation.

The Court does not base its conclusion on these points, however. Moini has failed to make a prima facie case of discrimination because he has provided no evidence he was treated worse than other similarly situated employees outside his protected groups. Specifically, the Court can find no record evidence Moini's adjunct title was stripped, while a similarly situated, younger or non-Iranian, employee retained his or her adjunct title. Because Moini has failed to demonstrate he was treated differently than similarly situated employees outside his protected classes, his discrimination claim

fails.

Similarly, Moini fails to make a prima facie case of retaliation based on the removal of his adjunct title. Moini has failed to provide any evidence Defendants took this action because he engaged in protected activity. Even if Moini's title was removed after he engaged in protected activity—and, as the Court has noted above, the timing of the alleged removal is unclear from the record—there is no evidence of a causal relationship between the two events. Thus, Moini has failed to establish a prima facie case of retaliation for the alleged removal of his adjunct title.

**b.      Failure to Rebut Defendants' Legitimate, Non-Discriminatory Reasons**

Even if Moini had made a prima facie case of discrimination or retaliation, Defendants are still entitled to summary judgment. Defendants provide evidence of a legitimate, non-discriminatory reason for the rejection of Moini's application for Adjunct Professor, as well as for the removal of Moini's existing adjunct title, if any. Specifically, Professor Martin's email to Moini states:

> We aren't able to accommodate your request for two reasons. First, as we aren't seeking Adjunct Professors, there aren't any position open for which you can apply. Secondly and most importantly, last spring we began an effort to scrutinize those who held that title in our Department. A decision was made that we would (re)appoint only those who held a faculty title at another institution of higher education as adjunct faculty. As a result, several adjunct appointments were not renewed. We realize the Department website does not accurately reflect the names of those who hold the title but this will be addressed once our Department webmaster situation is remedied.

Defs. Mot. Summ. J. [#36], Att. 3 at 31.

Moini offers no evidence to rebut Defendants' legitimate, non-discriminatory reason. Consequently, summary judgment must be granted in Defendants' favor.

**4.      Removal from "cmprof" Mailing List**

Moini fails to make a prima facie case of either discrimination or retaliation based on this act,

because it does not constitute an "adverse employment action" under either claim. Moreover, Moini has failed to rebut Defendants' legitimate, non-discriminatory reasons for removing him from the email mailing list.

### a.   No Prima Facie Case

Removal from an email mailing list is clearly not the sort of "ultimate employment decision" required for an act to be an adverse employment action under a Title VII discrimination claim. Nor is it an act sufficiently adverse that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

This is especially true in light of the legitimate, non-discriminatory reason Defendants provided for Moini's removal from the "cmprof" email mailing list. Defendants provide an email, apparently a response to one from Moini asking why he had been removed from the list, which reads in part:

> Yesterday I undertook a general cleanup of the various listserves. I was surprised at who had been added to the cmprof listerve [sic] over the years. As there are communications that go out to that list that are intended only for voting faculty, I removed a number of people including a few other lecturers and several staff. I did ensure that everybody remained on, or was added to, the appropriate list (either cmlect or cmadm).

Defs. Mot. Summ. J. [#36], Att. 3 at 32. If this evidence is true—and Moini has provided no facts to dispute it—the "adverse employment action" at issue is Moini was moved from a more privileged email mailing list to a less privileged one. While this might be annoying or insulting, it is neither an ultimate employment decision, nor an act which would dissuade even a faint-hearted employee

from making a complaint of discrimination.[5]  Accordingly, Moini has failed to establish a prima facie case of either discrimination or retaliation.

**b.      Failure to Rebut Defendants' Legitimate, Non-Discriminatory Reasons**

Although Moini has failed to establish a prima facie case, the Court considers Defendants' evidence of a legitimate and non-discriminatory reason for removing Moini from the "cmprof" mailing list.  Specifically, Defendants provide evidence Moini was removed from the list during an administrative cleanup because he did not meet the criteria of those supposed to be on the list.  Moini provides no evidence to rebut this reason.  Thus, for this additional reason, Defendants are entitled to summary judgment on Moini's discrimination and retaliation claims based on his removal from the "cmprof" email mailing list.

**5.      2008 Reprimand Letter**

Again, Moini fails both to establish a prima facie case and to rebut Defendants' proffered legitimate reasons for reprimanding him.   Accordingly, Defendants are entitled to summary judgment.

On February 18, 2008, Moini received a letter from Dr. Quy with the subject, "Letter of Reprimand."  Defs.' Mot. Summ. J. [#36], Att. 5 at 25.  The letter begins: "As we discussed, your failure to cooperate with me and to follow instructions is unacceptable." *Id.*  The letter goes on to state Moini's "performance regarding the management of personnel and resources of the Mass Spectrometry Facility (MSF) is less than satisfactory and requires improvement." *Id.*  The letter then purports to recount the events of Moini's 2007 Annual Performance Evaluation, in which Moini and

---

[5] The Court notes in passing the overwhelming evidence in this case demonstrates Moini was anything but faint-hearted when it came to complaining about what he perceived as discrimination or retaliation.

Dr. Quy allegedly discussed "the need to change procedures sufficiently to ensure the department's equipment [was] being used to its full potential across the university community." *Id.*

The letter continues, describing an alleged conversation between Moini and Dr. Martin, in which Dr. Martin gave Moini "specific instructions to change the MSF reporting procedures in order to bill customers by the individual machine used for sample analysis rather than the type of analysis procedure alone." *Id.* The letter states Moini made no progress on this task for three months, so Dr. Quy repeated his instructions to Moini during a meeting on January 29, 2008. *Id.* The letter complains Moini's lack of responsiveness "delayed an initiative by us to increase and broaden MSF operations and utilization," and concludes by scheduling a meeting in "early March" to discuss Moini's progress. *Id.* at 26.

### a.     No Prima Facie Case

Again, Moini has failed to demonstrate a prima facie case of either discrimination or retaliation. With respect to his discrimination claim, Moini has provided no evidence a similarly situated employee—which in this case means an employee who was perceived by his employer as repeatedly failing to follow instructions from his supervisors—from outside his protected classes was treated differently. With respect to his retaliation claim, Moini has provided no evidence this reprimand letter was issued because he engaged in protected activity. Consequently, Moini has failed to state a prima facie case.

### b.      Failure to Rebut Defendants' Legitimate, Non-Discriminatory Reasons

Additionally, Moini has failed to provide evidence rebutting Defendants' legitimate, non-discriminatory reasons for reprimanding him. Moini has provided evidence he *disagrees* with the decision to reprimand him, and even disagrees with the underlying factual bases for the reprimand,

but this is insufficient to create a genuine dispute of material fact about whether Defendants' reasons were pretextual. *See LeMaire v. La. Dep't of Transp. and Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."). Because Moini has failed to provide evidence rebutting Defendants' non-discriminatory reason for reprimanding him, Defendants are entitled to summary judgment on this claim.

### 6. 2008 "Shop Survey"

Once again, Moini fails both to make a prima facie case of discrimination or retaliation, or to rebut Defendants' proffered non-discriminatory reasons for their actions. Consequently, Defendants are entitled to summary judgment on this claim.

According to the undisputed record evidence, in spring 2008 the Department of Chemistry and Biochemistry conducted a "shop survey" of all Department service centers, including Moini's Mass Spectrometry lab. Defs.' Mot. Summ. J. [#36], Att. 7 at 3, 5–13. Although survey responses from both faculty and non-faculty rated Moini's facility between "Fair" and "Good," the facility was the lowest scoring of the seven departmental services. *Id.* at 5.

More significantly, however, survey comments indicate some users of the Mass Spectrometry facility had concerns with the facility generally, and Moini in particular. For instance, some of the negative faculty comments include: "Time for general revamping of personnel and/or procedures"; "The director of this facility needs to go"; "One cannot rely on this facility to help in the identification of unknowns"; "Replace the person in charge"; and "Get rid of Mehdi." *Id.*

The faculty responses were not uniformly negative, however, and also included some praise for Moini and the facility: "Dr. Moini is always very helpful and things seem to get done well once

-18-

he becomes personally involved in a particular problem. Unfortunately, this isn't possible as a routine solution"; "Mehdi seems to be very helpful with my students"; and "We only rarely use this facility. The few times we have, we had good service." *Id.*

Similarly, most non-faculty comments were negative—"Get new staff. The data is all over the place and one always has to question the results"; "Improve the timeliness! And consistency of qualified staff"; "It is hard to submit air sensitive samples and expect the results to come back accurate"; "Moini does a very poor job with the facility"; "Our lab no longer uses these facilities because of bad experiences in the past"; "The facility needs to work more hand-in-hand with the users in order to get this facility up to par to deliver the necessary results"; "The staff seems highly unwilling to help under a variety of circumstances"; and "This service is essentially hit or miss"—while a small number were more positive—"I have no problem with the HRMS facility. However my experience with the LRMS facility is not generally as positive effective [sic]"; "The mass spec department is well equipped and provides access to most instruments required"; "The staffs' helpfulness is generally good . . . they are good at 'fire-fighting,' but leadership seems poor"; and "Mehdi can be helpful and generally takes an interest in your results." *Id.* at 10.

a.     **No Prima Facie Case**

Moini has failed to make a prima facie case of discrimination or retaliation for three reasons. First, a departmental survey is not an adverse employment action within the context of either a discrimination or a retaliation claim. Second, with respect to his discrimination claim, Moini has failed to provide evidence a similarly situated employee from outside his protected classes was treated differently. Finally, with respect to his retaliation claim, Moini has failed to provide evidence the shop survey, or the negative results reflected therein, were caused by Moini's involvement in

protected activity.  Accordingly, Defendants are entitled to summary judgment on this claim.

7.    **March 2008 Failure to Hire**

Moini's claims based on Defendants' failure to hire him for a tenure-track position in 2008 fail as a matter of law.

On October 12, 2007, Moini applied for a tenure-track faculty position in the Department. Defs.' Mot. Summ. J. [#36], Att. 8 at 9.  He also provided a list of three references from outside the University, *id.* at 20, but there is no evidence he submitted any letters of recommendation.  On March 25, 2008, Moini received a rejection email from Dr. Martin.  *Id.* at 35.  According to Dr. Martin's affidavit, the person ultimately chosen for the position was Dr. Lauren Webb.  *Id.* at 3.

Defendants concede Moini has established a prima facie case for discrimination based on their failure to hire him, because Dr. Webb is both younger than Moini, and not Iranian.  The Court agrees Moini has established a prima facie case of discrimination on this claim.  To the extent Moini is basing a retaliation claim on this act, however, he has failed to establish a prima facie case because he has provided no evidence Defendants' choice to hire Dr. Webb instead of him was motivated by his involvement in protected activities.

a.    **Failure to Rebut Defendants' Legitimate, Non-Discriminatory Reasons**

Moini has failed to rebut Defendants' non-discriminatory reasons for their decision to hire Dr. Webb instead of him.  Defendants offer two reasons for their decision to hire Dr. Webb instead of Moini: (1) Moini's failure to provide letters of recommendation from his external references made his application incomplete, such that the faculty search committee did not consider Moini's application; and (2) Dr. Webb has more impressive academic credentials than Moini.  Defs.' Mot. Summ. J. [#36], Att. 8 at 3.

In response, Moini claims: "Plaintiff's file was not incomplete; the prior year's reference letters were valid and Plaintiff was never advised otherwise, nor advised to submit any further documentation." Pl.'s Resp. [#42] at 13. However, Moini provides no evidence to support this claim. Even if he had, however, it would not be sufficient to rebut Defendants' proffered non-discriminatory reason for not hiring him. Title VII allows an employer's application review procedure to be inefficient, unreasonable, or even downright stupid, so long as it is not illegally discriminatory. Just because Defendants' selection process may have been illogical, does not mean it was illegal.

Moini further disputes the claim Dr. Webb's academic qualifications were superior to his own. However, as noted above, disputing the facts underlying an employer's decision is not sufficient to demonstrate pretext. Moreover, the record evidence shows Moini and Dr. Webb's qualifications were sufficiently different that Defendants' may have legitimately preferred Dr. Webb's skill set over Moini's. Again, the Court's job is not to second-guess Defendants' strategic employment decisions; it is simply to ensure Defendants are not illegally discriminating or retaliating against Moini.

Moini has failed to rebut the non-discriminatory reasons proffered by Defendants. Consequently, Defendants are entitled to summary judgment on this claim.

**8.     Removal of Lecturer Title**

Moini has failed to establish a prima facie case for discrimination or retaliation under this claim. Moreover, he has failed to rebut the legitimate, non-discriminatory reason proffered by Defendants. Consequently, Defendants are entitled to summary judgment on these claims.

According to evidence provided by Defendants, Moini held the annually appointed position

of Lecturer from 2002 to 2008. Defs.' Mot. Summ. J. [#36], Att. 7 at 3. A Lecturer appointment expires each year on May 31, but a (technically former) Lecturer may continue to teach classes and assign grades throughout the summer without an additional appointment. *Id.*

### a. No Prima Facie Case

Defendants provide evidence Moini's Lecturer title was not removed, but simply expired and was not renewed following his termination. *Id.* Moini provides no evidence Defendants independently stripped him of his Lecturer title. Thus, to the extent Moini intends to base his discrimination or retaliation claims on such an independent action, he has failed to demonstrate any adverse employment action actually occurred. Therefore, Moini has necessarily also failed to demonstrate he was treated differently than a similarly situated employee outside his protected groups; or that the Defendants' purported action was motivated by Moini's protected activities.

To the extent Moini intends to complain about the non-renewal of his Lecturer title, it is simply a consequence of the non-renewal of his employment generally, and will be analyzed under that claim.

Because Moini has failed to establish a prima facie case of discrimination or retaliation, Defendants are entitled to summary judgment on this claim.

### 9. 2008 Non-Renewal As Senior Research Scientist and Director of Mass Spectrometry

Although it finds the issue somewhat close, the Court concludes Moini has failed to establish a prima facie case of discrimination based on Defendants' non-renewal of his appointment as a Senior Research Scientist and Director of Mass Spectrometry. Moreover, because Moini has failed to rebut the legitimate, non-discriminatory reason proffered by Defendants for Moini's non-renewal, Defendants are entitled to summary judgment on this claim.

On July 1, 2008, Moini received a memorandum from Dr. Richard Quy entitled, "Non-Renewal of Appointment as Sr. Research Scientist." Defs.' Mot. Summ. J. [#36], Att. 6 at 2. The letter apprised Moini his appointments would not be renewed "for the fiscal year beginning September 1, 2008." *Id.* The letter explains:

> This action is being taken because of the lack of acceptable improvement in your performance in the areas of hiring and maintaining an effective staff, obtaining research grants to fund your independent research, keeping the chairman's office informed on material issues relating to the use of your time and cost overruns, optimizing the use of university mass spectrometry equipment, and promoting collaborative research and MS service among the department faculty and among the faculties of other departments and ORU's. These performance problems have been discussed with you over the course of the last several years. Unacceptable performance raises the costs of operation, causes the underutilization of university equipment, and impedes research progress among the research faculty and staff.

*Id.* Subsequently, Defendants issued a second non-renewal letter which did not contain the above paragraph. *Id.* at 3–4.

**a.      No Prima Facie Case**

The only disputed element in Moini's prima facie discrimination case is whether he was replaced by somebody outside his protected class.  Defendants argue Moini has not satisfied this element because his immediate successor, Dr. Rambod Daneshfar, was also Iranian.  Moini disagrees, pointing out Dr. Daneshfar was only an interim replacement, and Moini's permanent replacement, Dr. Karin Keller, was both younger and not Iranian.  Moini suggests temporarily replacing Moini with another Iranian was a tactic used as "a disguise to the act of discrimination." Pl.'s Resp. [#42] at 4.  Because there is no evidence supporting this argument, the Court rejects it.

Dr. Daneshfar was appointed as interim director on July 2, 2008.  Defs.' Mot. Summ. J. [#36], Att. 7 at 23.  Dr. Keller was hired on or about December 18, 2008.  *Id.*, Att. 6 at 8.  Though it is not impossible, Moini has provided no direct evidence suggesting Dr. Daneshfar's appointment

was merely a ruse to disguise Defendants' intentional discrimination. And, given Dr. Daneshfar served as Director of Mass Spectrometry for approximately five and a half months, the circumstantial evidence does not support Moini's argument.

The Court agrees an employer cannot "game the system" and categorically avoid Title VII liability simply by firing a person and temporarily replacing him or her with a token member of the same protected class. In each case, courts must analyze the evidence in the light of common sense and determine whether, under the circumstances of that particular case, a plaintiff has established a prima facie case. Here, Moini has provided insufficient evidence to create a genuine dispute of material fact whether his replacement by Dr. Daneshfar was merely a ruse to hide discrimination. Accordingly, Moini has failed to establish a prima facie case of discrimination.

Similarly, Moini has failed to establish a prima facie case of retaliation. Specifically, Moini has not demonstrated a genuine dispute of material fact about whether his non-renewal was motivated by his protected activity.

**b.      Failure to Rebut Defendants' Legitimate, Non-Discriminatory Reasons**

Moini has failed to provide evidence rebutting Defendants' legitimate, non-discriminatory reasons for his non-renewal. Accordingly, Defendants are entitled to summary judgment on this issue.

The Court has already recited much of the evidence supporting Defendants' proffered reason why Moini's appointment as Senior Research Scientist and Director of Mass Spectrometry was not renewed: his 2008 reprimand for failure to follow the directions of his superiors; the Spring 2008 "shop survey"; and the letter of non-renewal itself. Defendants also point to Moini's October 18, 2007 performance evaluation, which notes many of the same concerns. Defs.' Mot. Summ. J. [#36],

Att. 5 at 2–6.  In short, Defendants have provided ample evidence they deemed Moini's performance unacceptable—which is, of course, a legitimate reason to terminate an employee.

By contrast, Moini offers insufficient evidence of pretext.  Moini points out his negative evaluation came after he made some complaints of discrimination.  Moini further notes his disagreement with his evaluation, his reprimand, and the shop survey.  With respect to Moini's timing argument, it is, without more, simply not sufficient to demonstrate pretext.  Further, as has already been noted, Moini's factual disputes regarding his evaluation, reprimand, and the shop survey are insufficient to establish pretext.

It is not uncommon for an employee to disagree with an employer's assessment of his or her performance; standing alone, however, it is not evidence of discrimination.  Nor does Moini's *post hoc ergo propter hoc* argument hold water under these circumstances.  The undisputed record evidence demonstrates Defendants perceived Moini's job performance as unacceptable.  Defendants may have been wrong in their perception, had unreasonable standards, or exercised poor judgment in not renewing Moini's appointment.  However, those things are not actionable under Title VII.  Absent evidence of discrimination on the basis of Moini's age or national origin, or of retaliation for Moini's protected activities—which evidence is wholly lacking—this Court must grant summary judgment in favor of Defendants on this claim.

**10.    Replacement As Director**

Because Moini's non-renewal was the *sine qua non* of his replacement by both Dr. Daneshfar and Dr. Keller, these acts are properly considered part of Moini's non-renewal claim.  However, to the extent Moini urges them as independent claims, he has failed to establish a prima facie case for discrimination or retaliation.

#### a.     No Prima Facie Case

As an initial matter, the act of being replaced is not, divorced from the decision to terminate, an adverse employment action.  By the time one is being replaced, the ultimate employment decision has presumably already been made; moreover, a reasonable employee would not be dissuaded from engaging in protected activity by the threat his or her vacated position would be filled by another person, regardless of whether the replacement was within or outside a protected class.  Further, Moini has failed to provide evidence his being replaced by a particular person was motivated by his national origin, his age, or his engaging in protected activity.

Because Moini has failed to establish a prima facie case of discrimination or retaliation, Defendants are entitled to summary judgment on this claim.

### 11.     Denial of Faculty Grievance Procedure

Moini has failed to establish a prima facie case of discrimination or retaliation regarding this claim.  Moreover, Moini has failed to provide evidence rebutting Defendants' non-discriminatory reason for denying Moini access to the faculty grievance procedure.  Accordingly, Defendants are entitled to summary judgment on this claim.

#### a.     No Prima Facie Case

Moini has failed to establish a prima facie case of discrimination or retaliation based on this claim.  First, absent evidence not before this Court, denial of a particular (perhaps inappropriate) grievance procedure does not appear to be an ultimate employment decision.  Likewise, there is no evidence denial of a particular grievance procedure would deter a reasonable employee from engaging in protected activity.  The Court assumes there is some substantive difference between the staff grievance procedure Moini received, and the faculty grievance procedure he sought, but the

Court has no evidence of what that difference is. Without some evidence on this point, the Court concludes Moini has failed to demonstrate this is an adverse employment action in the context of either a discrimination or a retaliation claim.

Moreover, Moini has failed to demonstrate he was treated differently than others outside his protected group with respect to the grievance procedure he received, or that his being denied the faculty grievance procedure was motivated by his engaging in protected activity. Thus, his prima facie case fails for this reason as well.

**b.    Failure to Rebut Defendants' Legitimate, Non-Discriminatory Reasons**

Additionally, Moini has failed to rebut Defendants' non-discriminatory reasons for denying him the faculty grievance procedure. Defendants have offered evidence Moini was denied the faculty grievance procedure in accordance with University of Texas System's Board of Regents' Rule 31001, Part 1, Section 3, which states in part: "Administrative and academic (faculty) titles, duties, and pay rates are distinct and severable. Departure or removal from an administrative position does not impair the individual's rights and responsibilities as a faculty member." Defs.' Reply [#44], Att. 4 at 6. An email dated September 11, 2008, purportedly from Steven W. Leslie, cites that rule and concludes: "Accordingly, someone who holds both titles may only use faculty procedures to deal with issues that arise out of their faculty appointment and must use staff procedures to deal with issues arising out of their staff appointment." *Id.*

The Court notes while Leslie's conclusion is not inconsistent with the text of Rule 31001, it is certainly not compelled by it. However, Leslie's interpretation is the only evidence before the Court. In the absence of any contradictory evidence from Moini, the Court credits Leslie's interpretation. Such a policy is a legitimate, non-discriminatory reason for denying Moini access to

the faculty grievance procedure to challenge removal of a staff title.

Moini has provided no evidence to rebut Defendants' proffered reasons. Accordingly, Defendants are entitled to summary judgment on these claims.

**12.     Negative Job References**

Moini has failed to establish a prima facie case of discrimination or retaliation for this act. Accordingly, Defendants are entitled to summary judgment on these claims.

Moini claims Defendants provided him with negative job references. *See, e.g.*, Pl.'s Resp. [#42] at 3 (listing "Providing negative job references for Plaintiff" as a discriminatory and retaliatory act). However, Moini cites to no supporting record evidence in his response to Defendants' motion for summary judgment, even though Defendants specifically challenge the factual basis of Moini's claim. Without any evidence Defendants provided negative job references for Moini, this claim cannot survive. Defendants are therefore entitled to summary judgment on this claim.

The Court briefly notes, even if Moini had provided evidence of the existence of negative job references by Defendants, he still would not have established a prima facie case of discrimination or retaliation. First, negative references do not constitute adverse employment actions within the meaning of a Title VII discrimination claim. Second, Moini has the typical causation problems—no evidence other similarly situated employees from outside his protected classes were treated differently; and no evidence the negative references were motivated by his protected activity. Accordingly, Defendants are entitled to summary judgment on these bases as well.

### Conclusion

The record in this case leaves no question in the Court's mind Moini felt he was receiving unfair treatment from Defendants. However, Moini has failed to provide objective evidence he was

being treated differently than similarly situated employees outside his protected classes.  Equally fatal to his claims, Moini has failed to provide evidence any unfair treatment he received was based on his age, national origin, or retaliation for his protected activities.  Moreover, an examination of the record demonstrates Defendants had many plausible, legitimate reasons not to renew Moini's appointment: his apparent inability to manage and retain his staff; his undeniable conflicts with coworkers; his seemingly paranoid belief he was being followed and secretly monitored; or his difficulty taking and following directions from management.  In light of the record evidence, no reasonable juror could conclude Moini's non-renewal (or Defendants' other purported adverse employment actions) was motivated by an illegal purpose, rather than Moini's clear inability to work harmoniously within the Department.  Therefore, for the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment.

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment [#36] is GRANTED.


SIGNED this the 1st day of June 2011.


_Sam Sparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE